AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

United States of America
v.
JOHN ANTHONY O'BRIEN

*Defendant(s)*

Case No. 6:25-mj-00015-HBK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 28th, 2025 in the county of Mariposa in the Eastern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 36 CFR 2.35(c) | Presence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources, is prohibited |

This criminal complaint is based on these facts:

See affidavit attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Philip Schulz US Park Ranger
*Printed name and title*

Sworn to me in accordance with Fed.R.Crim.P. 4.1.

Date: 04/29/2025

[signature: Helena M. Barch-Kuchta]
*Judge's signature*

City and state: Yosemite, California

US Magistrate Judge Helena Barch-Kuchta
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

## BACKGROUND OF AFFIANT

1. I, Philip Schulz, further state, I am a Law Enforcement Officer ("Officer"), employed by the National Park Service ("NPS"). I have worked in Yosemite and Zion National Parks as a Law Enforcement Officer since 2021. I completed the Land Management Police Training program at the Federal Law Enforcement Training Center (FLETC) at Glynco, Georgia in March of 2025. In 2020 I completed a 700 hour training course through the FLETC accredited Park Ranger Law Enforcement Academy (NPS-PRLEA) at Southwestern Community College in North Carolina. I am a nationally registered EMT (EMT-B). I have investigated numerous acts of disorderly conduct and driving under the influence of alcohol/drugs.
2. The facts of this criminal complaint are based on my personal observations, on my training and experience, as well as my consultation with other Officers. This affidavit is intended to show merely that there is sufficient probable cause for the criminal complaint and does not set forth all my knowledge about this matter.

## JURISDICTION

3. The facts set forth in this criminal complaint occurred on April 28th, 2025, within the geographic boundaries of Yosemite National Park, California. Yosemite National Park is an area of federally owned public land administered by the NPS. Yosemite National Park is an area of the special maritime and territorial jurisdiction of the United States as defined by Title 18 U.S.C. § 7 (3): "Special maritime and territorial jurisdiction of the United States

defined" and by Title 16 U.S.C. § 57: "Yosemite and Sequoia National Parks; exclusive jurisdiction of United States."

4. Yosemite National Park is located within Mariposa, Madera, Mono and Tuolumne Counties, all of which are located within the Eastern District of California.

## CHARGES

5. Based upon the facts set forth in this criminal complaint, probable cause existed JOHN ANTHONY O'BRIEN violated the following laws of the United States on April 17th, 2025 within Yosemite National Park:

    a. *36 CFR § 2.35 (c): Presence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources, is prohibited.*

## PROBABLE CAUSE

6. At approximately 1930 hours on April 28th, 2025 the Yosemite Emergency Communications Center (Dispatch) paged Yosemite EMS for an unresponsive male in the back of a Yosemite Shuttle Bus. Dispatch then asked Officer Justin Fey and I to also respond. Officer Fey advised Dispatch that shift (all available rangers) would be responding. Officer Michael Terry was the first on scene and found a male slumped on a seat on the bus, later identified as O'BRIEN by a clear and valid Nevada Driver's license. O'BRIEN only responded once Officer Terry shook him by the shoulder.

7. Officers Natalie Woller, Sean Fitzgerald, Fey, and I arrived on scene. When I arrived on the bus, Officer Terry was speaking with O'BRIEN and advising him to keep his hands out of his pockets. Officer Terry asked O'BRIEN for his ID and O'BRIEN handed him an ID which

appeared to be a work-related ID. Officer Terry clarified he would like a driver's license and pointed to O'BRIEN's wallet in his hands where a driver's license could be seen in one of the wallet compartments. While OBRIEN was working on getting the various IDs, Officer Terry asked O'BRIEN how much he had to drink and O'BRIEN replied "quite a bit". O'BRIEN smelled heavily of alcohol beverages. Officer Terry asked him what 'quite a bit' was and O'BRIEN said "not that it's any of your business, but yeah". I asked O'BRIEN to put his wallet back in his pocket and stand up. O'BRIEN was slow to respond but did comply. I needed to remind O'BRIEN to keep his hands out of his pockets.

8. O'BRIEN was shaky and unsteady while trying to stand up and Officer Terry and I maintained O'BRIEN in an escort hold near his elbows to help keep him on his feet all the way to the door of the bus because he was swaying as he was walking with an inconsistent gait. There was an additional time I told O'BRIEN to take his hand out of his pockets while we were walking. Officer Fey and I helped him off the bus and walked him approximately 75 feet to our patrol vehicle. O'BRIEN was slow and unsteady on his feet during this time, swaying while walking. Officer Fey asked O'BRIEN if he lived here, O'BRIEN said "Yes I do". When Officer Fey asked him 'where at' in the park, O'BRIEN asked if he had to answer and when Officer Fey told him no, O'BRIEN said he'd "rather not say" and that he had "done nothing wrong". Officer Fey reminded him he "passed out" on a bus.

9. Officer Fey positioned O'BRIEN in front of my patrol vehicle, needing to physically lean and assist him against the push bumper. I asked him again what 'quite a bit' to drink meant, and O'BRIEN answered he was "just trying to get to the employee pub". O'BRIEN indicated that he was trying to get to the employee pub to continue to drink. During the interview

O'BRIEN tried to explain that he had only drank lots of water. A third time I had to tell O'BRIEN to keep his hands out of his pockets.

10. While putting O'BRIEN into a position of disadvantage for the search, I asked O'BRIEN to spread his feet apart and O'BRIEN leaned forward on the push-bar of my patrol vehicle and began moving his feet straight back. I told O'BRIEN he was just stepping backwards and he had to spread his feet apart. I had to use my own foot to guide O'BRIEN's foot in the correct direction (to the side). I told O'BRIEN to place his palms together behind his back and he continued to lean with his palms on the vehicle. When I told him a second time he moved his feet back together and stood up straight to get his hands behind his back, though his palms were not together. I ultimately had to guide his hands into position. I then had to remind O'BRIEN to spread his feet apart as wide as he could. While I was searching O'BRIEN I had pulled contents out of his right jacket pocket and right shorts pocket and O'BRIEN stated with slurred speech "I'm a dangerous citizen, this is ridiculous". I asked O'BRIEN if he was still ok with me searching him and he responded "yeah, go ahead". I completed the consent search.

11. I asked O'BRIEN where his dorm was and he replied "my dorm was in Curry Village, I'm going to the kitchen." I asked him what's at the kitchen and he replied "Degnan's Kitchen" (a restaurant in Yosemite Village). I asked him why he was trying to get there and he replied "I want to, I don't understand the need to explain myself". For a 4th time in my presence, O'BRIEN placed his hands in his pockets and I reminded him again to keep his hands out of his pockets.

**CONCLUSION**

Probable cause existed O'BRIEN was grossly impaired to a degree he was a danger to himself or others. O'BRIEN was passed out on a bus for approximately an hour and a half and required at least 3 people to wake him up, did not know where he was, and was unable to walk without assistance, and indicated his intention was to continue drinking. Officer Fitzgerald transported O'BRIEN to Mariposa County Jail. Based on the forgoing facts of this affidavit, I believe probable cause existed for the arrest of JOHN ANTHONY O'BRIEN for being under the influence of alcohol to a degree that endangers himself, others, or property within Yosemite National Park on April 28th, 2025.

Respectfully submitted,

Philip Schulz
United States Park Ranger
National Park Service
April 28, 2025

Subscribed and sworn to before me on:

Type text here

Helena M. Barch-Kuchta

Helena Barch-Kuchta
The Honorable
United States Magistrate Judge
Date

Approved as to form by:

/s/ Briana M. Vollmer

Briana M. Vollmer
US Park Ranger (Rule 180)
April 28, 2025